355 So.2d 322 (1978)
Robert J. WRIGHT, an Individual, et al.
v.
ALABAMA POWER COMPANY, a corp.
SC 2561.
Supreme Court of Alabama.
January 6, 1978.
Rehearing Denied March 10, 1978.
R. Ben Hogan, III, and George C. Hawkins, Gadsden, Hogan, Smith & Alspaugh, Birmingham, for appellants.
C. William Gladden, Jr., Birmingham, for appellee.
PER CURIAM.
This is an appeal taken from a directed verdict entered in favor of the defendant at the close of the plaintiff's evidence. Plaintiff, Robert J. Wright, sought damages for his injury and his wife sought damages for loss of his consortium, for "willful or malicious failure . . . to warn or guard against" a certain fence on Alabama Power Company property which the plaintiff asserted constituted a dangerous instrumentality *323 to members of the public who used Lake Neely-Henry near Gadsden.
The suit grew out of an incident which occurred July 19, 1975. Wright, retired from the Navy Submarine Service, suffered injuries when he collided with a fence partially submerged in the lake while he was riding backward on an inner tube attached by a ski rope to a power boat. The boat was being driven at a high rate of speed by a friend who testified that he saw the fence and stopped the boat, but that the force of the boat's turn carried the inner tube into a collision course with the fence. The lake was created when Neely-Henry Dam was constructed on the Coosa River by Alabama Power Company. Prior to building the dam, the Power Company purchased land on both banks of the river up to the datum plane of 511 feet above mean sea level.
The fence which Wright struck was a metal and wooden one which was placed on the property before it was purchased by the Power Company. The original fence belonged to Alabama Technical College and extended to the bank of the Coosa River, and was constructed to prevent cattle owned by the trade school from wandering onto adjacent land. When the dam was built and the lake was created, the fence extended into the lake for a distance of some 50 feet and would become partially submerged during periods when the water level reached its peak. At other times, the fence would be out of the water.
The plaintiff argues that Alabama Power Company knew the fence was on the property and willfully determined not to remove it and willfully determined not to place any guards or warnings around or in the vicinity of the fence before flooding the area.
Plaintiff claims the Power Company had knowledge of the existence of the fence because the Company had the land surveyed and cleared of trees and brush before the dam was built and the water level was raised. Plaintiff contends, therefore, that a jury could infer from these facts the requisite knowledge of the condition, from which the jury could infer that the Company knew of the dangerous condition and willfully or maliciously failed to warn or guard against it.
In short, plaintiff contends that there was a scintilla of evidence that the company is liable under the exception contained in § 3 of Act No. 463, Acts of Alabama 1965, approved August 19, 1965, page 663, § 35-15-4, et seq. Code 1975.
Act No. 463 recites:
"To clarify and codify the common law with respect to the duty of care owed by landowners towards persons who may be upon their premises for hunting, fishing, sporting or recreational purposes and not for purposes connected with the landowner's business.
"Be It Enacted by the Legislature of Alabama:

"Section 1. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry and use by others for hunting, fishing, trapping, camping, water sports, hiking, boating, sight-seeing, or other recreational purposes, or to give any warning of hazardous conditions, use of structures or activities on such premises to persons entering for the above-stated purposes, except as provided in Section 3 of this Act.
"Section 2. An owner, lessee or occupant of premises who gives permission to another to hunt, fish, trap, camp, hike, sight-see, or engage in other sporting or recreational activities upon such premises, does not thereby (a) extend any assurance that the premises are safe for such purpose; (b) constitute the person to whom permission has been granted the legal status of an invitee to whom a duty of care is owed; or (c) assume responsibility for or incur liability for any injury to person or property caused by an act of such person to whom permission has been granted, except as provided in Section 3 of this Act.
"Section 3. This Act does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to *324 hunt, fish, trap, camp, hike or sight-see was granted for commercial enterprise for profit; or (c) for injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike or sight-see was granted to third persons as to whom the person granting permission, or the owner, lessee or occupant of the premises, owed a duty to keep the premises safe or to warn of danger.
"Section 4. Nothing in this Act creates a duty of care or ground of liability for injury to person or property.
"Section 5. Nothing in this Act shall be construed as granting or creating a right for any person to go on the lands of another without permission of the landowner.
"* * * "
More than half of the states now have laws similar to Act No. 463. The first of these was apparently enacted in Michigan in 1953. M.C.L.A., § 300.201; M.S.A., § 13.1485. The Michigan Court of Appeals held in Estate of Thomas v. Consumers Power Co., 58 Mich.App. 486, 228 N.W.2d 786 (1975), that:
"* * * [T]his statute does not change the common-law duty of owners and occupiers of property owed to those who come upon such property as mere licensees . . . . The act is merely a codification of tort principles which are universally recognized in common-law jurisdictions.
"* * * The act in question has the undoubted purpose of furthering recreational activities in Michigan by making certain areas available for such purposes while clearly restating the common-law liability of owners to those who come gratuitously upon their land. . . . The statute neither restricts nor adds to the common-law rights of the plaintiffs." (228 N.W.2d at 789, 790)
The Alabama Act expressly states that its purpose is "to clarify and codify the common-law with respect to the duty of care owed by landowners . . . ." (emphasis supplied).
The Act was intended to insure that landowners were not to be held to a standard of due care toward persons upon their land with permission for hunting, fishing and recreational purposes. The first of these acts was passed when forest owners opened their lands to deer hunters after suffering damage to their forests from excessive deer. The forest owners later became concerned about their potential liability for injuries suffered by those who had been invited on their land to hunt deer; therefore, they sought a statutory limitation upon their liability. Copeland v. Larson, 46 Wis.2d 337, 174 N.W.2d 745 (1970). The legislation places persons upon the land with permission or invitation, but for purposes unrelated to the owner's business, in the status of licensees with the landowners' duty being the duty owed to licensees.
The plaintiff in this case was on the premises with at least the implied permission of the Power Company. The Power Company does not deny that members of the general public freely engage in water sports on Lake Neely-Henry. The plaintiff is, then, by statute, considered a licensee.
The issue here is: whether the trial court should have submitted the issue to the jury. A similar question as was presented this Court in W. S. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593, 165 So.2d 375 (1963). The test to be used to determine the propriety of a directed verdict is found in Rule 50(e), A.R.C.P., which reads as follows:
"The demurrer to the evidence, the motion to exclude the evidence, and the affirmative charge with or without hypothesis, are hereby abolished. The court may direct a verdict, or enter judgment in accordance with the motion for directed verdict, or enter judgment notwithstanding the verdict under this rule, whether or not the party making the motion has the burden of proof, in accordance with the scintilla evidence rule."
We discussed this rule in detail in Loeb and Co., Inc., v. Martin, 295 Ala. 262, 327 So.2d 711 (1976). In Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975), this Court, referring to Rule 50(e), stated:

*325 "Whether or not the scintilla rule requires a given case to go to the jury is dependent upon the substantive law."
The duty of care owed by landowners to licensees was generally expressed by this Court in Fowler, supra, as follows:
"The duty of one who owns or is in possession of property towards a licensee is not only to abstain from inflicting intentional, willful or wanton injuries, but to refrain from exposing such licensee to new hidden dangers, such as traps, pitfalls or obstructions which arise through his active negligence. [citations omitted]. * * * A trap or pitfall need not be intentionally set to catch a licensee who has been using the premises. A statement to that effect in Alabama Great Southern R. Co. v. Campbell, supra [32 Ala.App. 348, 26 So.2d 124], must be read in the light of the exact holding in the case there cited, Hayward v. Drury Lane Theatre, 1917, 2 K.B. 899, 914, where it was said:
"`* * * The owner is under no liability as to existing traps unless he intentionally set them for the licensee, but must not create new traps without taking precautions to protect licensees against them. . . .'
* * * * * *
"This duty does not restrict the owner or possessor's right to make use of the property or to make such changes therein as he may desire, but requires him, if he does any positive act creating a new danger to a person who may exercise the license, to give to such licensee reasonable notice or warning of the new danger or to exercise reasonable care to provide safeguards against such new danger. (emphasis added).
The complaint in Fowler charged that the defendant had placed on a roadway under construction, which was used by members of the public with the defendant's acquiescence, a dangerous obstruction which constituted a trap or pitfall. In that case, the defendant left a steel boom of a crane or dragline extended across one side of the roadway about three feet above a partially completed ditch. The plaintiff was injured when the truck in which he was riding collided with this dragline. On appeal, the defendant argued that the judgment for the plaintiff could not stand, because he was a bare licensee, and the failure of the defendant to place warning lights on the crane boom at nighttime, even though it was known that persons used the road being constructed, did not constitute wantonness. This Court rejected that argument, and held that there was evidence which justified a submission of the issue to the jury.
We are faced with the same problem, as was the Fowler court, i. e., whether as a matter of law the facts of this case place a duty on the Power Company to give Wright proper warning.
As we read the Fowler decision, it. stands for the proposition that a landowner will generally owe no duty to warn a licensee of a potentially dangerous condition unless he does some positive act which creates a new hidden danger, pitfall or trap, which is a condition that a person could not avoid by the use of reasonable care and skill. See Alabama Great Southern R. Co. v. Campbell, 32 Ala.App. 348, 26 So.2d 124 (1946). Otherwise, a landowner has the right to make use of his land as he may see fit. Fowler, supra. The licensee's entrance on the land carries with it no right to expect the land to be made safe for his reception, but he must assume the risk of whatever may be encountered. See McMullan v. Butler, 346 So.2d 950 (Ala.1977); Prosser, The Law of Torts, p. 375 (4th ed.). Once he is there, the law only requires the landowner to refrain from wantonly, maliciously or intentionally injuring him; in other words, the landowner is not liable unless he does some act which goes beyond mere negligence.
The pivotal question is whether a partially submerged fence can be classified as a trap or pitfall. Applying the facts of this case to the law, we hold that this fence was not a hidden trap or pitfall. In Great Southern R. Co. v. Green, 276 Ala. 120, 159 So.2d 823 (1964), this Court stated:

*326 "Submerged conditions hidden by the water, but adding to the danger of a trespasser entering the pool are not to be regarded as a pitfall or trap. . . ."
Even though the Green decision involved the death of a trespassing child, the definition of a trap or pitfall with regard to submerged objects found in bodies of water is controlling.
There is another reason we find that the fence, under the facts of this case, cannot be considered a trap or pitfall. It was undisputed that the fence had been in place since Lake Neely-Henry was built. In fact, for much of the year the fence was out of the water; only when the lake reached its high level mark did part of it become submerged. According to the testimony of Wright's witness, Jimmy Ray McClendon, who was a marine policeman with the Alabama Conservation Department, the fence had been there since he began patrolling the lake. In fact, he testified that one of his duties was to report dangerous conditions, but that he considered the fence to be of no concern since it was open and obvious.
Wright occupied the status of an ordinary licensee who is exposed to a potentially dangerous condition; as such, there is no duty on the Power Company to give Wright a warning about objects existing or conditions brought about by the Power Company's use of its landraising and lowering the level of the lake.
The effect of our holding is in line with cases such as McMullan v. Butler, supra, wherein this Court held:
"* * * Surely a homeowner should not be obliged to hover over his guests with warnings of possible dangers to be found in the condition of the home (e. g., waxed floors, slipped rugs, toys in unexpected places, etc., etc.). . . . ." (emphasis added).
Our holding should not be construed as saying that a landowner's positive acts which create a new hidden danger, trap or pitfall would not be actionable. Fowler, supra.
The plaintiff also argues that the trial court erred in allowing the Power Company to file responses to the plaintiffs' requests for admission more than thirty days after the requests were served on the Power Company. We have recently held that the trial court may, in its discretion, allow late responses to requests for admission. Our review is limited to abuses of discretion. Evans v. Insurance Co. of North America, 349 So.2d 1099 (Ala.1977). We find no abuse of that discretion here.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, MADDOX, ALMON and BEATTY, JJ., concur.
FAULKNER, JONES, SHORES and EMBRY, JJ., dissent.
SHORES, Justice (dissenting):
I respectfully dissent. I believe the plaintiffs in this case are entitled to have the jury pass on the issue of the Power Company's liability to them, even though they are, by virtue of the act set out in the majority opinion, mere licensees. In fact the Fowler case, upon which the majority relies, clearly states that where the landowner ". . . does any positive act creating a new danger to a person who may exercise the license, to give such licensee reasonable notice or warning of the new danger or to exercise reasonable care to provide safeguards against such new danger." (276 Ala. at 600, 165 So.2d at 382). A jury could find that the Power Company, by causing the fence in this case to be partially submerged, has created a new danger, thereby giving rise to a duty to warn and safeguard against such danger. In fact, this court expressly so held in Fowler, a factually similar case, saying:
"Despite defendant's knowledge of the traffic, no lights, signs or warning devices of any kind were present to warn a traveler of the presence of the ditch and dragline.
"Under the evidence when reviewed in the light most favorable to the plaintiff, the jury could have determined: (1) That *327 the `road under construction' signs had not been used to block the roadway for a long period of time; (2) that no lights at all were put out by the defendant, the Fowler Company; (3) that the defendant took no steps to stop the use of the road by the general public, which road was used regularly by approximately one thousand cars a week with at least the implied permission of the Fowler Company, and most of the traffic was in the early morning and late afternoon hours of each day; (4) that notwithstanding knowledge of all these conditions, the Fowler Company's employees consciously left the dragline extending all the way across one half of the much traveled roadway in such a way that it could not be seen in hours of darkness by a reasonably safe driver of a southbound vehicle approaching the obstruction on an uphill grade in time to stop before colliding with the dragline." (Emphasis Supplied) (276 Ala. at 602, 603, 165 So.2d at 384.)
Likewise, in the present case there is evidence from which the jury could have concluded: (1) that members of the public openly and freely used Neely-Henry Lake with the knowledge and acquiescence of the Power Company for boating and other water sports (in fact, this is not denied by the Power Company); (2) that no buoys or other warning marked the existence of a fence submerged in the water; (3) that with knowledge that persons did use the lake for skiing and other water sports, and knowing that the fence was there, the Power Company consciously left the fence standing when it flooded the area with water in such a way that the submerged fence could not be readily seen by persons engaging in such sports; and (4) that no effort was made to guard or warn against this dangerous condition. I believe this was sufficient to submit the case to the jury on the plaintiffs' claim of willful or malicious failure to warn off the dangerous condition or structure.
Because the trial court directed a verdict for the defendant and did not permit the jury to pass on the issues, I would reverse the judgment appealed from.
FAULKNER, JONES and EMBRY, JJ., concur.