This is an appeal from the grant of a directed verdict and a judgment in favor of the defendant. We affirm.
The plaintiffs (the Driskills) were operating a motor boat on Weiss Lake, an Alabama Power Company lake in Cherokee County. The boat ran into a submerged tree trunk, causing Mr. Driskill to be thrown into the water where he sustained physical injuries. He and Mrs. Driskill brought an action against the Power Company alleging negligence and wanton conduct in causing or allowing the submerged tree trunk to exist in a manner which was hidden from view, and in failing to mark it and warn the plaintiffs of the danger. During the trial the defendant's motion for a directed verdict was granted and this appeal ensued. Whether that determination was proper is the issue before us.
O'Donohue v. Citizens Bank, Ala.Civ.App., 350 So.2d 1049
(1977), contains a succinct statement on the right of a party to a directed verdict:
 It may be stated as a general rule that a party is entitled to a directed verdict where the law would not authorize a jury to render a verdict on the evidence or where a verdict by the jury would be contrary to the principles of law as applied to the facts presented at trial . . . [I]f there is a scintilla of evidence supporting the position of the party against whom the motion is made, so that his case is entitled to go to the jury, a directed verdict cannot be granted. Moreover, when a directed verdict is requested, the entire evidence must be viewed in a light favorable to the opposing party. Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797. . . .
See also Ford Motor Co. v. Rodgers, Ala., 337 So.2d 736 (1976) and Alabama Power *Page 266 Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975).
The principles of law applicable to this case are contained in Code of 1975, § 35-15-1 et seq. which govern the duty of care owed by an owner of premises to persons on his premises for recreational purposes. Those provisions were reproduced and construed by this Court in Wright v. Alabama Power Co., Ala.,355 So.2d 322 (1978), a case which involved personal injuries sustained by a plaintiff who collided with a partially submerged fence in another APCO lake. We observed that "[T]he Act was intended to insure that landowners were not to be held to a standard of due care toward persons upon their land with permission for . . . recreational purposes." The duty which did devolve upon an owner toward such a person as this plaintiff, a licensee, we held to be the same duty expressed in W.S. FowlerRental Equipment Co. v. Skipper, 276 Ala. 593, 165 So.2d 375
(1963):
 The duty of one who owns or is in possession of property towards a licensee is not only to abstain from inflicting intentional, willful or wanton injuries, but to refrain from exposing such licensee to new hidden dangers, such as traps, pitfalls or obstructions which arise through his active negligence. (citations omitted)
. . . . .
 This duty does not restrict the owner or possessor's right to make use of the property or to make such changes therein as he may desire, but requires him, if he does any positive act creating a new danger to a person who may exercise the license, to give to such licensee reasonable notice or warning of the new danger or to exercise reasonable care to provide safeguards against such new danger.
(citations omitted) [emphasis added]
In Wright, supra, we commented further upon the effect of theFowler court's language:
 As we read the Fowler decision, it stands for the proposition that a landowner will generally owe no duty to warn a licensee of a potentially dangerous condition unless he does some positive act which creates a new hidden danger, pitfall or trap, which is a condition that a person could not avoid by the use of reasonable care and skill. . . . Otherwise, a landowner has the right to make use of his land as he may see fit. . . . The licensee's entrance on the land carries with it no right to expect the land to be made safe for his reception, but he must assume the risk of whatever may be encountered. . . . Once he is there, the law only requires the landowner to refrain from wantonly, maliciously or intentionally injuring him; in other words, the landowner is not liable unless he does some act which goes beyond mere negligence. [emphasis added]
As Wright considered the pivotal question to be whether a partially submerged fence could be a trap or pitfall, so in this case we must consider whether a submerged tree trunk can be a trap or pitfall, and like Wright we must consider as controlling the definition contained in Alabama Great SouthernR. Co. v. Green, 276 Ala. 120, 159 So.2d 823 (1964):
 Submerged conditions hidden by the water, but adding to the danger of a trespasser entering the pool are not to be regarded as a pitfall or trap. . . .
The fact that Green involved a trespasser (while Wright
concerned an invitee) did not modify the application of that definition.
Wright was based upon another and perhaps more persuasive reason, however. Under the evidence in Wright it was established that the fence in question had been in place from the time the lake was constructed. The plaintiff's relationship to that condition was explained:
 Wright occupied the status of an ordinary licensee who is exposed to a potentially dangerous condition; as such, there is no duty on the Power Company to give Wright a warning about objects existing or conditions brought about by the Power Company's use of its land — raising and lowering the level of the lake.
The facts of this case are strikingly similar to those inWright, the main differences *Page 267 
being the character of the obstacle and the nature of the accident. This accident occurred in a slough created when the lake was originally backed up in the early 1960's. A row of trees, varying in number, originally lined the entrance to the slough, these trees at that time being ten to twenty feet in height above the water. By the summer of 1974 or 1975 these trees had rotted and fallen into the water, but their stumps remained. The Power Company would reduce the water level of the lake in the fall and winter, revealing the stumps, but would begin to raise the water level in the month of March so that in the summer months, when water sports were popular, the stumps would be invisible. The testimony tended to establish no uniformity in the height of the stumps, but confirmed that the trees broke off a few inches below the normal water level, covering them in summer and exposing them in winter.
Even so, there was no evidence that from the time the lake was built the defendant did anything except raise and lower the water for the defendant's purposes. That is what was done inWright and we held there that such particular conduct was not a positive act which created a new hidden danger, trap or pitfall. Thus in this instance the Company was under no duty to warn the plaintiff, an ordinary licensee, of a possible danger concerning a condition brought about by its ordinary use of its land — raising and lowering the level of the lake. Accordingly, the trial court was correct in granting a directed verdict in favor of the defendant because the law applicable to the evidence would not authorize a jury to reach a contrary verdict. Therefore, the judgment must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, MADDOX and ALMON, JJ., concur.
FAULKNER, JONES, SHORES and EMBRY, JJ., dissent.