**Allen Keith RUSSELL, a minor suing By and Through his father and next friend, James E. RUSSELL, Plaintiff,**

v.

**TENNESSEE VALLEY AUTHORITY, Bear Creek Development Authority and Bear Creek Watershed Association, Inc., Defendants.**

**No. CV 81–HM–0974–NW.**

United States District Court,
N.D. Alabama,
Northwestern Division.

March 25, 1983.

Charles Rosser, Rosser & Munsey, Tuscumbia, Ala., for plaintiff.

James Davis, Fite, Davis & Fite, Hamilton, Ala., for defendant Bear Creek Development and Bear Creek Watershed Assoc., Inc.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Assoc. Gen. Counsel, Melvin L. Harper, Edwin W. Small, Knoxville, Tenn., for defendant Tennessee Valley Authority.

## MEMORANDUM OF DECISION

HALTOM, District Judge.

This is a civil action by Allen Keith Russell, a minor suing by and through his father and next friend, James E. Russell, against the Tennessee Valley Authority (TVA), Bear Creek Development Authority (BCDA) and Bear Creek Watershed Association, Inc. (BCWA), for personal injuries and damages allegedly sustained by him when he slid over the end of Little Bear Creek Dam spillway on June 1, 1980.

The only allegations in the complaint in this action are stated in terms of negligence. The complaint alleges that the defendants "negligently designed, constructed, maintained, operated and supervised a water empoundment [sic] on Little Bear Creek in Franklin County, Alabama, by constructing an earthen dam with a cement spillway, sloping downward for about two hundred feet (200'), then terminating with a fall or drop of about twenty feet (20') down to the creek bed below, and provided the same for use by the public for recreational purposes." The complaint further alleges that on June 1, 1980 while plaintiff was using the spillway for "recreational purposes" by sliding down the same he slid over the end of the spillway and fell approximately twenty feet into the creek bed and was thereby seriously injured. The complaint further alleges that plaintiff's described use of the spillway on the occasion in question was a long-followed "recreational" practice of which the defendants were well aware. The complaint further alleges that plaintiff's injuries and damages were a proximate result of defendants' "said negligence."

TVA has filed a motion for judgment on the pleadings or, in the alternative, for summary judgment, which is before the court for decision. Since both plaintiff and TVA have presented to the court matters outside the pleadings which have been considered by the court, the court is treating TVA's motion for judgment on the pleadings as one for summary judgment to be disposed of as provided in Rule 56, Fed.R. Civ.P. All parties have been given reasonable opportunity to present to the court all material made pertinent to such a motion by Rule 56.

The defendants BCDA and BCWA have each filed motions for summary judgment herein which have been orally argued and submitted.

After careful consideration of the pleadings, exhibits, affidavits, answers to interrogatories, depositions, and all other evidentiary matter offered in support of and in opposition to the motions for summary

judgment, the court ascertains and finds that the following described material facts exist without substantial controversy.

TVA designed, constructed, and operates and maintains an earth dam with a concrete spillway known as Little Bear Creek Dam, which impounds Little Bear Creek Reservoir in Franklin County, Alabama. Little Bear Creek Dam was designed and built and is maintained and operated solely by TVA as a part of a 4-reservoir, multi-purpose water resource development project, the Bear Creek Project, in northwest Alabama. The project was approved and funded by the United States Congress. Its primary purpose was to reduce flooding. However, certain anticipated recreational uses were a secondary purpose of the project.

Little Bear Creek Dam itself was not designed for any recreational purpose, but was designed exclusively by TVA as a water impoundment and flood control structure. Little Bear Creek Dam was designed in accordance with generally accepted engineering principles in light of its purposes.

The spillway of Little Bear Creek Dam is approximately 200 feet long and slopes downward from the top of the dam. The lower end of the spillway terminates approximately 20 feet above the creek bed. Exhibits B through I to Allen Keith Russell's deposition are photographs which accurately portray the dam and spillway as of June 1, 1980, except that the wire barrier shown at the end of the spillway, the handrails shown at the top of the spillway, and the chainlink fence shown at the bottom were not in place at that time. The only other difference is that water was going over the dam and down the spillway on June 1, 1980.

The design of the concrete spillway of Little Bear Creek Dam, an upstream ungated curved weir with sloping concrete shute and downstream ski-jump end sill with a drop of approximately 20 feet to a rock channel, is a standard and accepted hydrological engineering design and was based on hydrological engineering (including hydraulic model studies) and cost-benefit consider-

ations. The slope of the Little Bear Creek Dam spillway and the drop at its end were designed primarily to reduce the amount of rock excavation and thus reduce the cost of the spillway. The ski-jump end sill was used at Little Bear Creek Dam as an economic means to dissipate the energy of the water flowing down the spillway so that it would not erode the foundation of the spillway.

The normal operating plan for Little Bear Creek Reservoir calls for Little Bear Creek Reservoir to be at summer pool level from April 15 to October 15, except as this might vary because of rainstorms or vector control. During the winter the reservoir level is drawn down by a gated low-level sluice to provide storage capacity for flood control. During the summer releases are normally made over the spillway rather than through the low-level sluice to ensure that the water will not be deficient in dissolved oxygen and that the water will not be colder than normal streamflows. Also, release of water over the spillway during the summer automatically keeps the reservoir at summer pool level. On June 1, 1980 at the time of the accident in question TVA was releasing water over the Little Bear Creek Dam spillway in accordance with its standard operating procedures and practices.

The water impoundment and flood control structure known and designated as Little Bear Creek Dam, including the concrete spillway on which the accident in question occurred, has never been provided, operated or maintained by TVA for use by the public for recreational purposes. However, the structure was not enclosed, access to the spillway was not difficult, and TVA kept no employees regularly stationed at such location. The facility was inspected by TVA employees only on a monthly basis, except for unusual circumstances. No signs were posted warning that public use of the spillway for recreational purposes was prohibited.

At all times pertinent hereto, including the date of June 1, 1980, the defendant Bear Creek Development Authority

(BCDA) was a public corporation of the State of Alabama organized and existing pursuant to the provisions of Act 584, Acts of Alabama 1965 (codified as §§ 33–15–7 through 33–15–19, Code of Alabama 1975)[1] and under written contract with TVA dated December 13, 1967 (Exhibit B to plaintiff's Memorandum and hereinafter referred to as the December 13, 1967 contract) operated and managed the shoreline lands of Little Bear Creek Reservoir above the Little Bear Creek Dam. Such operation and management prerogatives included the authorized issuance by BCDA of recreational use permits for a specified fee to members of the general public between the ages of 16–65 who desired to use the land and water area of the Little Bear Creek Reservoir for recreational purposes.[2]

On June 1, 1980 plaintiff Allen Keith Russell, who was then 17 years 8 months old, went on a cookout with several friends at a campground in the general vicinity of Little Bear Creek Dam. On that date he purchased a Recreational Use Permit Daily (Exhibit A to plaintiff's Memorandum) from BCDA through its issuing agent, J.B. Hester, Jr., and paid therefor a fee of $1.00.[3] This Permit No. 14074 plainly and clearly states: "This permit required for fishing, hunting, swimming, skiing, camping, picnicing and boating for each person, age 16–65." At approximately 3:00 p.m., after splitting a six-pack of beer and having two shots of Vodka at the cookout between 1:00 p.m. and 2:00 p.m., plaintiff decided to go to Little Bear Creek Dam and slide down the concrete spillway as he had done on two prior occasions. On this particular occasion he slid halfway down the spillway standing up and then sat down to keep from falling head first at the end. When he reached the end the flow of water carried him over the end of the spillway and he fell approximately 20 feet to the creek bed. There was no surge of water and there was no abnormal, unusual or unexpected condition at the end of the spillway. Plaintiff knew there was a drop of 20 feet at the end of the spillway and knew he could be seriously hurt if he went over the end.

Plaintiff Allen Keith Russell was at the time in question on the Little Bear Creek Dam spillway engaging in recreational ac-

---

**1.** Section 33–15–2, Code of Alabama 1975, provides:

"In the interest of the unified development of Bear Creek and its tributaries and watershed, for the purposes of navigation, water conservation and supply, flood control, irrigation, industrial development, public recreation and related purposes, there is hereby authorized and shall be established as hereinafter provided, a development authority for the Alabama portion of the Bear Creek watershed. The authority, when incorporated in accordance herewith, shall be a public corporation and a political subdivision of the State of Alabama, composed of a board of directors selected and empowered as hereinafter provided."

Section 33–15–1(11), 1975 Code provides: "WATERSHED. Such term means and includes all lands in the counties of Marion, Colbert, Franklin and Winston, lying within 15 miles of Bear Creek and any of its tributaries."

Section 33–15–6(1)(d), 1975 Code, provides in pertinent part:

"[The authority] may enter into contracts and cooperative agreement with federal, state and local governments, with agencies of such governments and with private individuals, corporations, associations and other organizations, including the Bear Creek Watershed Association, Inc., whether organized under the laws of Alabama or of another state, as the board may deem necessary or convenient to enable it to carry out the purposes of this article. . . ."

Section 33–15–6(4)(d), 1975 Code, provides: "[The authority may] acquire or operate shoreline lands of reservoirs owned by the United States of America as the agent of the federal agency having custody and control thereof under appropriate agreements with such agencies."

**2.** Section III(c) of the December 13, 1967 contract provides:

"Subject to the provisions of this Agreement, BCDA's management program may include, without limitation, the following: (3) Imposition and collection of reasonable charges for use of recreational facilities."

**3.** TVA receives no benefit from the fees charged by BCDA for recreational use permits. The court expressly rejects the argument made by counsel for plaintiff that the wording of the December 13, 1967 contract between TVA and BCDA as a whole, and Sections III(c)(3) and VI(D) in particular, controvert this factual finding.

tivities for his own benefit and pleasure and not for purposes directly or indirectly connected with TVA's business.

At all times here pertinent neither BCDA or BCWA had any control or right of control whatever over the Little Bear Creek Dam physical facility itself, including the concrete spillway. Further, neither BCDA or BCWA was an owner, lessee or occupant of Little Bear Creek Dam on June 1, 1980 or at any time prior thereto.

■ Plaintiff admits that he was injured on TVA's property while "using the spillway for recreational purposes." In these circumstances, it is clear as a matter of statutory law that TVA cannot be liable on the basis of simple negligence as plaintiff alleges but was only under a duty to refrain from willfully and maliciously injuring him. This limitation on TVA's duty is set out in the Code of Alabama 1975, § 35–15–1, which provides in pertinent part:

An owner, lessee or occupant of premises owes no duty of care to keep such premises safe for entry and use by others for hunting, fishing, trapping, camping, water sports, hiking, boating, sight-seeing or other recreational purposes or to give any warning of hazardous conditions, use of structures or activities on such premises to persons entering for the above stated purposes, except as provided in section 35–15–3.

The statute was enacted "to insure that landowners were not to be held to a standard of due care toward persons upon their land with permission for hunting, fishing and recreational purposes." *Wright v. Alabama Power Co.,* 355 So.2d 322, 324 (Sup.Ct. of Ala.1978).

Section 35–15–3 exempts three situations from the limitation in 35–15–1, only one of which could possibly apply here. That exemption is stated as follows:

This chapter does not limit the liability which otherwise exists for wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity. . . .

The liability of landowners which "otherwise exists" in Alabama under such circumstances was stated in *Wright v. Alabama Power Co., supra:*

[A] landowner will generally owe no duty to warn a licensee of a potentially dangerous condition unless he does some positive act which creates *a new hidden danger, pitfall or trap,* which is a condition that a person could not avoid by the use of reasonable care and skill. See *Alabama Great Southern R. Co. v. Campbell,* 32 Ala.App. 348, 26 So.2d 124 (1946). Otherwise, a landowner has a right to make use of his land as he may see fit. *Fowler* [276 Ala. 593, 165 So.2d 375], supra. The licensee's entrance on the land carries with it no right to expect the land to be made safe for his reception, but he must assume the risk of whatever may be encountered. See *McMullan v. Butler,* 346 So.2d 950 (Ala.1977); *Prosser, The Law of Torts,* p. 375 (4th ed.). Once he is there, the law only requires the landowner to refrain from wantonly, maliciously or intentionally injuring him; in other words, the landowner is not liable unless he does some act which goes beyond mere negligence [355 So.2d at 325].

■ This court agrees with TVA's argument that the facts presented here would not support an allegation of willful and malicious injury even if alleged. The condition which plaintiff alleges caused him to slide over the end of the spillway and fall to the creek bed below was the flow of water down and over the end of the spillway. As the photographs (exhibits to plaintiff's deposition) show, that condition and the danger created by it were as open and obvious to plaintiff as to TVA. Plaintiff readily admitted that he was aware of the danger presented. Accordingly, under the statute discussed above and the controlling case law, TVA violated no duty owed to plaintiff. See *Driskill v. Alabama Power Co.,* 374 So.2d 265 (Ala.1979); *Wright v. Alabama Power Co., supra.* TVA's motion for summary judgment is due to be granted for the reasons above discussed.

■ As an alternative ground for granting TVA's motion for summary judgment

with respect to plaintiff's negligence charge, this court holds that plaintiff Allen Keith Russell was guilty of contributory negligence as a matter of law. This is a question for the court when "all reasonable men must draw the same conclusion therefrom." *Elba Wood Products, Inc. v. Brackin,* 356 So.2d 119 (Ala.1978). This court finds that reasonable men would not differ in holding that plaintiff's use of this concrete spillway as a sliding board constitutes contributory negligence. Therefore, any recovery by plaintiff for TVA's alleged negligence is barred as a matter of law.

Under the undisputed facts of this case, the motions for summary judgment of the defendants BCDA and BCWA are due to be granted. There can be no actionable negligence without a breach of a legal duty. *Bryant v. Morley,* 406 So.2d 394 (Ala.1981). In the instant case this court finds that neither of these defendants owed any duty whatever to plaintiff with respect to his recreational use of the Little Bear Creek Dam facility over which they admittedly had no incidents of ownership or control. To permit an amendment to the complaint in this action charging these defendants with willful or wanton conduct would avail plaintiff nothing.

The motion of each defendant for summary judgment will be granted by separate order.