[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1071 
The plaintiffs — Randy Tuders; James Tuders; Larry Nance, individually and as personal representative of the estate of Bobbi Jo Nance, deceased; and Anita Hicks, individually and as mother of Amanda Hicks and Kyle Hicks, deceased minors — appeal from a summary judgment entered in favor of the defendant, Paul Kell, doing business as Kell Realty Company. We affirm.
 I.
On July 4, 1995, Randy Tuders and his son James Tuders; Larry Nance and his wife Bobbi Jo Nance; and Anita Hicks and her children Amanda and Kyle Hicks (all referred to as "the boaters"), were passengers in a boat on Neely Henry Lake when a severe thunderstorm developed suddenly. As the weather got worse and the boaters saw lightning in their vicinity, they decided to get off the water immediately. The nearest shelter from the lightning and rain was a pier and boathouse, still under construction, that belonged to Kell. They tied the boat to the pier and stood on the pier under an overhanging portion of the boathouse roof to wait out the storm. Approximately 15 minutes later the boathouse collapsed. Bobbi Jo Nance, Amanda Hicks, and Kyle Hicks died; the others were injured. At the time of the accident, Kyle Hicks, Amanda Hicks, and James Tuders were ages 4, 8, and 16, respectively.
Kell had drawn a sketch of the boathouse he wanted and then had hired someone to build it for him. The plaintiffs testified that it was apparent that the boathouse was under construction. It had a roof, but the outside walls were incomplete. Bracing had been used to stabilize the walls of the boathouse during its construction; however, the bracing had been removed from the north wall before the construction was complete and before the boaters took shelter there. The evidence does not indicate who removed the bracing from the boathouse.
Randy Tuders, James Tuders, Larry Nance, and Anita Hicks filed a wrongful-death and personal-injury complaint against Kell and others.[1] They alleged that the defendants had negligently caused the deaths and personal injures incurred in the July 4, 1995, incident. The trial court entered a summary judgment in favor of Kell, holding that the boaters were trespassers on Kell's property; that the only duty Kell owed to the boaters was to refrain from wantonly or intentionally injuring them; that the plaintiffs did not present substantial evidence indicating that Kell had wantonly or intentionally injured them; and that §§ 35-15-1 to -5, Ala. Code 1975, shielded Kell from any liability in this case. The plaintiffs appealed. All defendants other than Kell have been dismissed.
 II.
We first address whether the Code sections governing the recreational use of land, §§ 35-15-1 to -5 ("the recreational-use statute"), apply to a situation like that presented in this case.[2] If so, then a *Page 1072 
landowner like Kell is liable only for willfully or maliciously injuring those who enter the land for recreational purposes. Kell argues that the recreational-use statute applies to him and that it limits his liability for accidents occurring on his property that arise out of certain recreational uses, among them water sports and boating. The plaintiffs argue that in order for the recreational-use statute to apply, a landowner must have granted permission to the general public to use the land for recreational purposes. Kell disagrees, arguing that it is not necessary for the landowner to give permission to the general public to use the land, and that cases interpreting the recreational-use statute, such as Clark v. Tennessee Valley Authority, 606 F. Supp. 130 (N.D. Ala. 1985), require that it be construed liberally in order to limit a landowner's liability.
Section 35-15-1 states:
 "An owner, lessee or occupant of premises owes no duty of care to keep such premises safe for entry and use by others for hunting, fishing, trapping, camping, water sports, hiking, boating, sight-seeing, caving, climbing, rappelling or other recreational purposes or to give any warning of hazardous conditions, use of structures or activities on such premises to persons entering for the above-stated purposes, except as provided in section 35-15-3."
This section refers to the rights of "persons entering" for certain activities (hunting, fishing, etc.). Section 35-15-1 does not specify whether the legislature intended that the "persons entering" were doing so lawfully. Section 35-15-3, cross-referenced in § 35-15-1, deals with the activities in the context of permission given for such use. Section 35-15-2 also deals with the effect of permission given for such activities. The principles of statutory construction require that we construe statutes dealing with the same subject matter in pari materia. Lambert v. Wilcox County Comm'n, 623 So.2d 727 (Ala. 1993). Furthermore, those principles call for us to refrain from using a strained or unnatural construction during the process of interpretation. Hall v. Underwood, 258 Ala. 392, 63 So.2d 683
(1953). See, also, Opinion of the Justices No. 368, 716 So.2d 1149
(Ala. 1998). We therefore hold that in § 35-15-1, the legislature, in speaking of "recreational purposes," was speaking of activities carried on or conducted by persons lawfully on the premises of the "owner, lessee or occupant."
This Court has previously given such a construction to the recreational-use statute. See Wright v. Alabama Power Co.,355 So.2d 322 (Ala. 1978), where this Court stated:
 "The [recreational-use statute] was intended to [ensure] that landowners were not to be held to a standard of due care toward persons upon their land with permission for hunting, fishing and recreational purposes. . . . The legislation [gives] persons upon the land with permission or invitation, but for purposes unrelated to the owner's business, . . . the status of licensees[,] with the [landowner's] duty being the duty owed to licensees."
355 So.2d at 324 (emphasis added). Although the recreational-use statute does not require that, for the statute to apply, the landowner must have given the general public permission to use the land, it is necessary that the landowner have given permission to the person or persons using the land to use it for recreational purposes. It is undisputed that Kell had not given anyone permission to use his land, pier, or boathouse. Therefore, Kell is not entitled to the immunity provided by the recreational-use statute.
We note that § 35-15-3 provides that the recreational-use statute "does not limit *Page 1073 
the liability which otherwise exists for [willful] or malicious failure to guard or warn against a dangerous condition, use, structure or activity." As we discuss in Part IV of this opinion, Kell's conduct in regard to the incident of July 4, 1995, was neither willful nor malicious. Furthermore, the landowner's liability recognized by §35-15-3 (liability "for [willful] or malicious failure to guard or warn") is premised upon someone's using real property after the "owner, lessee or occupant" has given permission to use the land for recreation — that circumstance is far removed from the situation presented in this case, where the plaintiffs claim they and the other boaters had permission implied by law pursuant to the "doctrine of necessity." The recreational-use statute applies to landowners who have given express permission for their land to be used for recreational purposes.
 III.
Having determined that the recreational-use statute does not apply, we now consider whether the boaters were trespassers or were licensees. "This Court looks to the status of the injured party in relation to the defendant's land or premises in deciding whether the defendant should be held liable for an injury to a visitor upon the land or premises." Hambright v. First Baptist Church-Eastwood, 638 So.2d 865, 868 (Ala. 1994). If a person is on the landowner's property without the consent of the landowner, then that person is a trespasser. Copeland v. Pike Liberal Arts School, 553 So.2d 100 (Ala. 1989). If a person is visiting the landowner's property with the landowner's consent or as the landowner's guest, but with no business purpose, then that person is a licensee. Id.
The plaintiffs argue that one who seeks shelter on another's land because of an emergency should be considered an "implied licensee," rather than a trespasser, pursuant to the "doctrine of necessity." The plaintiffs argue that under the principles stated in Restatement (Second) of Torts § 330 (1965), a person who enters another's land because of an emergency or necessity may enter under an "implied license." Kell points out that Alabama courts have not adopted Restatement § 330. He argues that because he was not present when the boaters came onto his property, did not extend any invitation to them to come onto his pier or into his boathouse, and did not know they were present, they were trespassers.
A marine patrol officer who had been stationed on Neely Henry Lake for approximately 30 years testified that the storm that arose on July 4, 1995, was the worst storm he had ever seen on that lake. Clearly, the boaters could not have reached their destination before the storm overtook them, so they sought shelter on the nearest property. According to the testimony presented, it is not unusual for boaters on Neely Henry Lake to do that. Kell testified that he had sought shelter on a stranger's land during a storm, but said he had taken shelter only on the land, not on a pier or near a building.
Section 330, Restatement (Second) of Torts, states the principle that "[a] licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." The Restatement recommends, however, that courts recognize a license implied by custom:
 "`The well-established usages of a civilized and Christian community' entitle everyone to assume that a possessor of land is willing to permit him to enter for certain purposes until a particular possessor expresses unwillingness to admit him. Thus a traveler who is overtaken by a violent storm or who has lost his way, is entitled to assume that there is no objection to his going to a neighboring house for shelter or direction. So too, if there is a local custom for possessors of land to permit others to enter it for particular purposes, residents in that locality and others knowing of the custom are justified in regarding a particular *Page 1074 
possessor as conversant with it and, therefore, in construing his neglect to express his desire not to receive them as a sufficient manifestation of a willingness to admit them."
Section 330, cmt. e.
We need not decide in this case whether to recognize a privilege implied by custom to enter another's land in a case of emergency or necessity. Even if we assume that the boaters were licensees and not trespassers (see our discussion in Part IV), we must conclude that Kell did not breach any duty he would have owed them. It follows that he also did not breach any duty he would have owed the boaters as trespassers.[3]
 IV.
If the boaters were licensees, then Kell, as the landowner, would have owed them the following duty:
 "The duty owed by a landowner to a licensee is to abstain from willfully or wantonly injuring the licensee and to avoid negligently injuring the licensee after the landowner discovers a danger to the licensee. This duty is not an active one to safely maintain the premises; instead, the landowner has the duty not to set traps or pitfalls and not to willfully or wantonly injure the licensee."
Hambright, 638 So.2d at 868 (citations omitted).
The plaintiffs argue that if this Court determines that the boaters were licensees, then Kell's removal of the bracing on the boathouse wall must be considered to have been "willful" and "wanton" because, they say, the bracing on the boathouse wall was a "safety device" — i.e., they say his removal of that "safety device" constituted wantonness. The plaintiffs rely on Henderson v. Alabama Power Co., 627 So.2d 878 (Ala. 1993), wherein this Court concluded that Alabama Power Company's modification of a safety device on a transmission tower could be analogized to the removal of a safety device from machinery in a workers' compensation context, an action that can be considered willful conduct on the part of an employee who removes it. If an employee is injured by machinery from which a safety device has been removed, then the injured employee has a cause of action against the culpable co-employee pursuant to § 25-5-11, Ala. Code 1975. In Henderson, a minor child trespassing on Alabama Power's property came into contact with a power line; he suffered second-degree burns because Alabama Power had modified a safety device. This Court held that whether Alabama Power's modification of the safety device constituted wantonness was a question of fact. The plaintiffs argue that whether Kell or an agent of his acted wantonly in removing the bracing is a question of fact for a jury to resolve and, thus, that the summary judgment was improper.
Kell argues that the bracing provided for a building under construction is not within the meaning of the term "safety device" as that term is used in § 25-5-11. He further argues that, even if the bracing can be considered a safety device, the removal of a safety device on private property does not, by itself, constitute wantonness. In Henderson, Kell says, the plaintiff presented evidence indicating that the power company knew that injury was likely to result from the modification of the safety device on its tower, but, he argues, no comparable evidence is present in this case.
In Henderson, this Court applied the statutory definition of "willful conduct" as it relates to co-employees in the workplace, see § 25-5-11(c), as a foundation for determining whether wanton conduct could *Page 1075 
be found in a case where the defendant was a public utility regularly engaged in activities subject to the workers' compensation laws. Since deciding Henderson, this Court has not applied that particular statutory definition as a means of determining whether wantonness could be found in any case outside the workers' compensation context. We conclude that we should not resort to the statutory definition of "willful conduct" relating to co-employees in the workplace as a foundation for defining "wanton conduct" in the substantially dissimilar situation where the question is the liability of a landowner to licensees for injuries sustained during a quite unexpected visit to a construction site on the landowner's property.
Notwithstanding that the definition provided by the Workers' Compensation Act does not apply here, we still must consider whether the removal of the bracing could be found to constitute a violation of the duty Kell would have owed to the boaters if, as they argue, they were licensees, i.e., the duty not to set "traps or pitfalls," not to wantonly injure them, and not to negligently injure them after he discovered a danger to them.
 "A `trap' is a danger that a person who does not know the premises could not avoid by the use of reasonable care. Wantonness has been defined as the conscious doing of some act or conscious omission of some duty by one who has knowledge of the existing conditions and who is conscious that doing, or failing to do, some act will probably result in injury."
Hambright, 638 So.2d at 868 (emphasis added) (citations omitted).
The plaintiffs acknowledge that the boaters recognized the boathouse to be in an incomplete state of construction when they chose to seek shelter under it during what apparently was the worst storm on Neely Henry Lake in 30 years. We are persuaded by the reasoning of Helvich v. George A. Rutherford Co., 96 Ohio App. 367,114 N.E.2d 514 (1953), regarding the circumstances presented by unfinished construction:
 "When a property is under construction, there are, of necessity, hazards created as the work progresses which are only eliminated by its completion. Anybody who goes upon such property with knowledge that it is under construction must meet with and guard himself against such natural and necessarily created dangers. A contractor is not compelled in the exercise of ordinary care, to guard against such natural dangers after the work day is over and the property is closed for ordinary purposes to business visitors, licensees or frequenters."
96 Ohio App. at 381, 114 N.E.2d at 522. By the use of reasonable care, the boaters would have avoided resort to the shelter of an incomplete structure, in favor of the nearby shore. When reasonable care would lead one to avoid potential dangers, there is no trap. Hambright, 638 So.2d at 868.
We find no evidence in the record that remotely suggests Kell set a "trap" or a "pitfall" for the boaters or that he consciously removed the bracing from the boathouse with the knowledge that his doing so probably would result in injury. Indeed, Randy Tuders and Larry Nance both testified that they knew of no evidence indicating that Kell intentionally or maliciously caused the collapse of the boathouse. The plaintiffs argue, however, that if they were licensees and if Kell's actions were not wanton, then, still, he owed them a duty not to expose them to a "new hidden danger" that they say resulted from negligence on his part as a landowner; they argue that the removal of the bracing on the boathouse wall was an affirmative act that exposed them to a "new hidden danger," and they argue that they should be allowed to pursue a negligence claim against Kell. Kell argues, in response, that he did not know the boaters were on his property and therefore could *Page 1076 
not have discovered that they were in danger.
As previously noted, the boaters knew they were entering an area of unfinished construction and were entering it in the middle of a severe storm. One has no duty to warn a licensee of open and obvious defects. Williams v. Bruno's, Inc., 632 So.2d 19 (Ala. 1993); Graveman v. Wind Drift Owners' Ass'n, Inc., 607 So.2d 199
(Ala. 1992). In Copeland v. Pike Liberal Arts School, this Court stated that the landowner's duty to a licensee "was not to willfully or wantonly injure him and not to allow him to be negligently injured after becoming aware of his peril." 553 So.2d at 103 (emphasis added). The Court further stated:
 "`This duty [to refrain from exposing a licensee to new hidden dangers] does not restrict the owner or possessor's right to make use of the property or to make such changes therein as he may desire, but requires him, if he does any positive act creating a new danger to a person who may exercise the license, to give to such licensee reasonable notice or warning of the new danger or to exercise reasonable care to provide safeguards against such new danger.'"
Id. (quoting W.S. Fowler Rental Equip. Co. v. Skipper, 276 Ala. 593,600, 165 So.2d 375, 382 (1963)). There is no dispute that Kell did not discover that the boaters had been present on his land, much less that they had been in any peril, until after the boathouse had already collapsed. Therefore, even assuming that the boaters were licensees, we conclude that the evidence does not indicate that Kell breached any duty he owed a licensee.
 V.
The plaintiffs next argue that they have a valid negligence claim against Kell either under the doctrine of respondeat superior or on the basis that he designed the boathouse, independent of his status as the landowner. The plaintiffs have alleged that the defendant Doug Walker was Kell's employee or agent, and that Walker negligently constructed the boathouse. Although Walker has been dismissed, the plaintiffs argue that whether he was Kell's agent is a question of fact to be decided by a jury. If Walker was Kell's agent, then, they say, under the doctrine of respondeat superior Kell could be liable for Walker's negligent acts. The plaintiffs cite no authority for this argument, however. In addition, they have alleged that Kell negligently designed the boathouse and that his negligence is shown by his having designed it although he is not trained in architecture, engineering, or construction. The only authority they cite in support of their negligent-design argument is St. Louis-San Francisco Ry. v. Kimbrell, 226 Ala. 114, 145 So. 433
(1932). In that case, the trial court charged the jury that if an owner of a building prepared and furnished the plans for a contemplated structure and those plans were defective, and if the work was done according to those defective plans, then the owner could be found liable if injury and damage resulted. This Court held that that charge stated a correct proposition of law. Kell argues in response that the only duty owed by a landowner to someone injured on his property is the duty derived from the injured party's status as a trespasser, a licensee, or an invitee. Kell's argument is well taken, and we conclude that the plaintiffs cannot alter the duty Kell owed the boaters as either trespassers or licensees, by asserting claims against him as the designer of the boathouse or claims based upon the doctrine of respondeat superior. See Thompson v. Champion Int'l Corp., 500 So.2d 1048
(Ala. 1986).
 VI.
Finally, the plaintiffs argue that even if Kell did not violate any duty he owed to the adult boaters, he owed a heightened duty to the three boaters who were minor children at the time of the boathouse collapse and that he violated his duty to them. The plaintiffs rely upon *Page 1077 
Motes v. Matthews, 497 So.2d 1121
(Ala. 1986), in which this Court adopted the test established in Restatement (Second) of Torts § 339 (1965) for determining when a landowner is subject to liability for physical harm to a trespassing child caused by an artificial condition upon the land. The test requires that a plaintiff prove the following five elements: (1) that the landowner knew that children were likely to trespass in the place where the condition existed; (2) that the landowner knew or had reason to know that the condition was one that involved an unreasonable risk of death or serious injury to children; (3) that the children did not discover the condition or realize the risk involved, because of their youth; (4) that the utility of maintaining the condition and the burden of eliminating the danger were slight as compared with the risk to children; and (5) that the landowner failed to exercise reasonable care to eliminate the danger or to protect the children. Kell argues that he did not owe any heightened duty to the minor children, because each of them was accompanied by a parent and by other adults.
Under ordinary conditions, trespassing children occupy the same status as trespassing adults. Copeland v. Pike Liberal Arts School, 553 So.2d at 102. A limited exception to this rule exists under certain circumstances when the child is injured by an "attractive nuisance" or an "artificial condition" on the property. See Hollis v. Norfolk Southern Ry., 667 So.2d 727 (Ala. 1995); Motes v. Matthews, 497 So.2d at 1123. In each of these cases, the trespassing children either were alone or were accompanied only by other children. The Court's research has not revealed any cases in which a landowner was held liable for injuries to a trespassing child who was accompanied by an adult. In one case dealing with a child who was accompanied by a parent, Williamson v. Tyson Foods, Inc., 626 So.2d 1261 (Ala. 1993), this Court held that a landowner could not be held liable for injuries to a minor child who was brought onto the premises by his father, because it was unforeseeable, as a matter of law, that the father would allow his child to be placed in, and to remain in, a position of danger. Although the situation in the instant case is different in some respects, we do not believe the principles of law applicable to unaccompanied children should be applied to children accompanied by responsible adults.
 VII.
The Court has struggled with the difficult facts presented by this case. Certainly the events of July 4, 1995, were tragic for all concerned. Our function, however, is to apply the applicable law to the facts, even when those facts are difficult. Although we have concluded that the recreational-use statute did not apply to Kell and that it is unnecessary to decide whether the boaters were trespassers or were licensees, the trial court nevertheless correctly entered the summary judgment in favor of Kell. This Court will affirm a summary judgment properly entered, notwithstanding that it was entered on a rationale different from that on which we find it proper. McAlpin v. City of Decatur,628 So.2d 611 (Ala. 1993).
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Cook, See, Brown,* and Johnstone,* JJ., concur.
*Although Justice Brown and Justice Johnstone were not members of this Court when this case was orally argued, they have listened to the tape of oral argument.
[1] The complaint named Kell Realty Company as a defendant. Paul Kell answered, stating that Kell Realty Company was a name under which he did business. The plaintiffs have not suggested otherwise. The notice of appeal carried the name "Kell Realty Company." We have restyled the appeal to indicate that Paul Kell, d/b/a Kell Realty Company, is the appellee.
[2] Sections 35-15-20 to -28, dealing with "public recreational use" and recreational land open "to the general public," are not applicable in this case. See Kennedy v. Graham, 516 So.2d 572
(Ala. 1987).
[3] If the boaters were trespassers, Kell would have owed them the duty "not to wantonly or intentionally injure [them] and to warn [them] of dangers known by [him] after [he] was aware of danger to [them]." Copeland v. Pike Liberal Arts School, supra, 553 So.2d at 102 (emphasis original). *Page 1078