417 So.2d 175 (1982)
Leon GLOVER, etc.
v.
CITY OF MOBILE, etc.
81-183.
Supreme Court of Alabama.
July 23, 1982.
*176 George J. Moore of Moore & Layden, Mobile, for appellants.
Thomas M. Galloway, Jr., of Collins, Galloway & Smith, Mobile, for appellees.
PER CURIAM.
Plaintiff Leon Glover, as Administrator, brought an action against Defendant City of Mobile for the wrongful death of his two minor sons. Plaintiff now appeals from a summary judgment for Defendant and the denial of his motion to reconsider.
We affirm.
Luscher Park, a recreational facility of the City of Mobile, borders on and is a part of the shoreline of the Dog River. Along a portion of the shoreline, the City built a pier, bulkheads, and a pavilion containing a food concession and a public restroom facility. The park is open to the public and no admission fee is charged. In an affidavit in support of the City's motion for summary judgment, the Mobile Parks Superintendent stated that the City "has never operated a swimming facility at Luscher Park."
Glover contends, however, that whirlpools in the water in front of the pavilion create a dangerous situation for those who do swim in the river, and that the City knew or should have known of the danger to the general public. Glover's two minor sons drowned in the Dog River while visiting Luscher Park in June of 1978.
Plaintiff alleges both negligent performance and wanton breach of the City's implied contract with the general public to take reasonable steps for water safety at the park and that both decedents were third party beneficiaries of that implied contract; that Luscher Park was an attractive nuisance because of the accessibility and alluring nature of the water; and that the City could have undertaken reasonable and feasible ways to remove or lessen the dangers posed by the deep water and whirlpools. Plaintiff also maintains that the provisions of Code 1975, § 35-15-1 et seq., are both unconstitutional and inapplicable to the instant case.
We note that § 35-15-1 et seq., enacted by the Legislature in 1965 as Act 463, was passed:
"[t]o clarify and codify the common law with respect to the duty of care owed by landowners towards the persons who may be upon their premises for hunting, fishing, sporting or recreational purposes and not for purposes connected with the landowner's business."
The statute itself provides:
"§ 35-15-1.
"An owner ... of premises owes no duty of care to keep such premises safe for entry and use by others for hunting, fishing, trapping, camping, water sports, hiking, boating, sight-seeing or other recreational *177 purposes or to give any warning of hazardous conditions, use of structures or activities on such premises to persons entering for the above-stated purposes, except as provided in section 35-15-3.
"§ 35-15-2.
"An owner ... of premises who gives permission to another to hunt, fish, trap, camp, hike, sight-see or engage in other sporting or recreational activities upon such premises does not thereby extend any assurance that the premises are safe for such purpose, constitute the person to whom permission has been granted the legal status of an invitee to whom a duty of care is owed or assume responsibility for or incur liability for any injury to person or property caused by an act of such person to whom permission has been granted, except as provided in section 35-15-4.
"§ 35-15-3.
"This chapter does not limit the liability which otherwise exists for wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or for injury suffered in any case where permission to hunt, fish, trap, camp, hike or sight-see was granted for commercial enterprise for profit; or for injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike or sight-see was granted to third persons as to whom the persons granting permission, or the owner ... of the premises owed a duty to keep the premises safe or to warn of danger.
"§ 35-15-4.
"Nothing in this chapter creates a duty of care or ground of liability for injury to person or property.
"§ 35-15-5.
"Nothing in this chapter shall be construed as granting or creating a right for any person to go on the lands of another without permission of the landowner."
Although the question of the applicability of § 35-15-1, et seq., to a municipality/landowner has not been addressed by this Court, we find that any discussion of that issue here would merely be an exercise in academics. The established rules of premises liability sufficiently resolve the pivotal question here of the City's duty to Plaintiff's sons because:
"[e]very theory of negligence works around to the question whether some one did or failed to do what a reasonably prudent and competent man would be expected to do under given circumstances. In determining what precautions were reasonably necessary and incumbent upon the defendant in the use of its property at the place in question, it must be held to have considered the known extent and nature of the use to which the place was customarily put by others than its owner."
Sheffield Co. v. Morton, 161 Ala. 153, 161, 49 So. 772 (1909).
The common law principle to which the Legislature referred in its statement of purpose for the adoption of Act 463 was well-stated in W. S. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593, 165 So.2d 375 (1963):
"The duty of one who owns or is in possession of property towards a licensee is not only to abstain from inflicting intentional, willful or wanton injuries, but to refrain from exposing such licensee to new hidden dangers, such as traps, pitfalls or obstructions which arise through his active negligence. [Cites omitted.] A trap or pitfall need not be intentionally set to catch a licensee who has been using the premises. A statement to that effect in Alabama Great Southern R. Co. v. Campbell, [32 Ala.App. 348, 26 So.2d 124 (1946)], must be read in the light of the exact holding in the case there cited, Hayward v. Drury Lane Theatre, 1917 2 K.B. 899, 914, where it was said:
"`... The owner is under no liability as to existing traps unless he intentionally set them for the licensee, but must not create new traps without taking precautions to protect licensee against them...'
". . .
"This duty does not restrict the owner or possessor's right to make use of the *178 property or to make such changes therein as he may desire, but requires him, if he does any positive act creating a new danger to a person who may exercise the license, to give to such licensee reasonable notice or warning of the new danger or to exercise reasonable care to provide safeguards against such new danger. [Cites omitted.]"
W. S. Fowler, at 276 Ala. 600, 165 So.2d 375.
Both the statute and the Fowler decision were considered and approved in Wright v. Alabama Power Company, 355 So.2d 322 (Ala.1978), wherein this Court held:
"As we read the Fowler decision, it stands for the proposition that a landowner will generally owe no duty to warn a licensee of a potentially dangerous condition unless he does some positive act which creates a new hidden danger, pitfall or trap, which is a condition that a person could not avoid by the use of reasonable care and skill. [Cite omitted.] Otherwise, a landowner has the right to make use of his land as he may see fit. [Cite omitted.] The licensee's entrance on the land carries with it no right to expect the land to be made safe for his reception, but he must assume the risk of whatever may be encountered. [Cites omitted.] Once he is there, the law only requires the landowner to refrain from wantonly, maliciously or intentionally injuring him; in other words, the landowner is not liable unless he does some act which goes beyond mere negligence."
Wright v. Alabama Power Company, at 355 So.2d 325.
We find no allegation by Plaintiff that the City did some positive act creating a new hidden danger, unavoidable through the use of reasonable care and skill. On the contrary, rather than avoiding the waters of the Dog River, Plaintiff's sons intentionally subjected themselves to possible dangers there by entering the water to swim. Further, in light of the City's policy of "no swimming" at Luscher Park, we find no evidence that the City maliciously, willfully or intentionally failed to warn against a potentially dangerous condition.
As to the possibility of the whirlpools' constituting an unreasonably dangerous condition, we note this Court's further language in Wright, supra:
"The pivotal question is whether a submerged fence can be classified as a trap or pitfall. Applying the facts of this case to the law, we hold that this fence was not a hidden trap or pitfall. In Great Southern R. Co. v. Green, 276 Ala. 120, 159 So.2d 823 (1964), this Court stated:
"`Submerged conditions hidden by the water, but adding to the danger of a trespasser entering the pool are not to be regarded as a pitfall or trap....'
"Even though the Green decision involved the death of a trespassing child, the definition of a trap or pitfall with regard to submerged objects found in bodies of water is controlling."
Wright, at 355 So.2d 325, 326.
While the whirlpools are certainly not "objects" or "bodies," as was the fence in Wright, the definition, as found in the Green decision, uses the word "condition." The "condition" of the whirlpools in the Dog River, then, was not created by the City's act of developing Luscher Park nor can it be classified as a trap or pitfall. Further, by simply recognizing and abiding by the City's intended uses of Luscher Park, the dangerous propensities of the water can reasonably be avoided.
Because the City owed no further duty to Plaintiff's sons than that set out in Wright, supra, and because the City has not breached that duty, we find that summary judgment as to the City's alleged negligence or wanton breach of an implied contract with Plaintiff's sons was entirely proper.
Similarly, summary judgment as to the count of attractive nuisance was properly entered by the trial court. In Bailey v. City of Mobile, 292 Ala. 436, 296 So.2d 149 (1974), this Court considered an action against the City for the drowning deaths of two children in a deep drainage ditch. The Court denied liability and held:
"Finally, this court said in Mayo v. Mobile Asphalt Co., 272 Ala. 442, 131 So.2d 881:

*179 "`We have held that water hazards are not dangerous instrumentalities and no legal duty is imposed on the owner of property to erect barriers, or other safeguards to protect children, not invitees, from water hazards. Cobb v. Lowe Mfg. Co., 227 Ala. 456, 150 So. 687.'"
Bailey, at 292 Ala. 439.
We hold, then, that the trial court was correct in entering summary judgment for Defendant City of Mobile and in denying Plaintiff's motion to reconsider. That judgment is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
JONES, J., dissents.
JONES, Justice (dissenting).
I respectfully dissent.
Applying § 35-15-1 to the City's operation of a public park, the majority has extended the equation of the minimum duty owed by landowners to trespassers and licensees to invitees. While most states have advanced their jurisprudence to abolish the distinction between the status of invitees and licensees, this Court has today taken a backward step; and, instead of advancing the status of the occupier of another's premises, it has lowered the status of an invitee to that of a licensee and a trespasser. (Indeed, the Restatement, cited infra, would impose liability upon the landowner even as to a licensee under the instant circumstances.)
I cannot read § 35-15-1 as expressing a legislative intent to lower the standard of care owed by a city to users of public lands. With large tracts of land suitable for hunting, fishing, etc., becoming vested in fewer and fewer private owners, § 35-15-1 finds its beneficient purpose in protecting such owners from the traditional invitee standard of care in order that more property will be made available for outdoor sports. The statute accomplishes this purpose by "clarify[ing] ... the common law" with respect to licensees; and, then, in effect, classifying one who may be upon the premises for such purposes, not "connected with the landowner's business," as a licensee.
The statutory scheme espoused in § 35-15-1 simply does not embrace the user of a municipal park. Such property is, by its very nature, public land; and those who use it were not intended by the statute to be reduced to the status of a licensee. One who uses a public park is an invitee; and I do not believe § 35-15-1 alters the common law degree of duty on the part of the city toward an authorized userthat duty being one of due care. To hold otherwiseas the majority doesis to hold that the city owes the duty of reasonable care in its construction and maintenance of city streets but only the duty not to wilfully or maliciously injure one who uses its public parks. Above all else, the law ought to make sense. The application of § 35-15-1 to a city park, in my opinion, does not make sense. See Restatement (Second) of Torts, § 342, Dangerous Conditions Known to Possessor (1974).