MADDOX, Justice.
The plaintiff appeals from a summary judgment for the defendant, Alabama Power Company.
This suit was filed against Alabama Power and several fictitiously named defendants on February 6, 1989. The plaintiffs are the administratrixes of the estates of four minors who drowned in Hatchett Creek below a dam owned by Alabama Power. Plaintiffs’ cause of action is based entirely upon Restatement (Second) of Torts § 339 (1965), and they claim that they presented the evidence necessary to support a cause of action under § 339 and that the trial court, therefore, erred in entering Alabama Power’s summary judgment.
The evidence before the trial court tended to show the following: Alabama Power owns an old rock dam on Hatchett Creek. The dam was erected to divert water for the generation of electricity for the Town of Goodwater; Alabama Power acquired the dam and other property along the creek in 1925, and since that time the dam has not been used for the generation of power. Alabama Power has made no changes to the property since it was acquired. In 1945, Alabama Power entered into an agreement with the Goodwater Sportsmen Association for the use of the dam site and adjoining property. The association made some concrete additions to the dam around 1947, and since that time some of that concrete has broken off the dam and fallen into the water below. In 1970, Alabama Power entered into an agreement with the Goodwater Lions Club for this property to be used by Boy Scouts and others for recreation. About that time, the Boy Scouts made certain repairs to the dam. This property had also been used for recreation by the general public, including members of the plaintiffs’ families, and Alabama Power had held out the property as being available for recreational uses. There were no fences or signs restricting access to the dam and the surrounding property.
The four children that drowned below the dam were all related. On July 26,1986, the children’s grandfather had passed away, and the family was assembled at the grandparents’ home about a mile and a half from the dam. Six children, ranging in age from 9 to 15, unattended by any adult, wandered off to Hatchett Creek and started playing in the creek; none of them could swim. They waded across the creek; one got close to the dam to put his hand in the falling water, and he slipped into a hole about 8 to 10 feet deep. There was evidence that the water flowing into this hole formed an “aerated hydraulic” that tended to hold the child under the water. The other children tried to help, but one by one they, too, slipped into the hole. Only one child was able to stay in a shallow area, and he succeeded in pulling one of the others out of the hole. The other four children drowned.
Because this lawsuit was filed prior to June 11, 1987, the effective date of Ala. Code 1975, § 12-21-12, which replaced the “scintilla rule” with the “substantial evidence rule,” our review of this summary judgment is governed by the “scintilla rule.” A motion for summary judgment may be granted only when there is no genuine issue of material fact and the mov-ant is entitled to a judgment as a matter of law. Furthermore, all reasonable doubts concerning a genuine issue of material fact must be resolved against the moving party. Best v. Houtz, 541 So.2d 8, 9 (Ala.1989).
The plaintiffs assert only that Alabama Power is liable under the theory of liability set out in Restatement (Second) of Torts § 339.
Alabama Power has cited a number of cases from other jurisdictions that hold that artificial conditions that resemble natural conditions do not fall under § 339 and that water conditions created artificially do not impose liability if those conditions are of the same type as naturally created ones. We do not need to address the issue of whether § 339 imposes liability for artificial water conditions that resemble natural ones, because the summary judgment is due to be affirmed on another, more basic, ground.
*996 This Court stated in Poole v. City of Gadsden, 541 So.2d 510, 512-13 (Ala.1989):
“Sections 35-15-1 through -5 define and limit the duties of an owner of recreational land in relation to a person using the premises for recreational purposes. An owner, whether public or private, owes no duty to users of premises except for injury caused by a willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.
“Sections 35-15-20 through -28, adopted in 1981, apply to owners of noncommercial public recreational land ... and provide such landowners even greater protections than §§ 35-15-1 through -5.”
Section 35-15-22 provides:
“Except as specifically recognized by or provided in this article, an owner of outdoor recreational land who permits non-commercial public recreational use of such land owes no duty of care to inspect or keep such land safe for entry or use by any person for any recreational purpose, or to give warning of a dangerous condition, use, structure, or activity on such land to persons entering for such purposes.”
Section 35-15-21(2) defines “outdoor recreational land” as follows: “Land and water, as well as buildings, structures, machinery and other such appurtenances used for or susceptible of recreational use.”
In this case, Alabama Power had made this dam site and the surrounding land available for recreational uses; indeed, maintenance and repairs to the dam had been made only by citizen groups, such as the Goodwater Sportsmen Association and the Boy Scouts, who used the area for recreation. Thus, Alabama Power had no duty to any person using the property for recreation to inspect for, make safe from, or warn of, any dangers involved with this property. These children went to the creek to wade and to play.
For the above reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, ALMON, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.