We granted certiorari review to consider whether the defendant municipality was shielded from liability under the "recreational use statutes," §§ 35-15-1 through -28, Ala. Code 1975.
Sharon Yarbrough, individually and as next friend of her minor daughter Christina Yarbrough, sued the City of Geneva, alleging negligence. On June 14, 1991, Christina Yarbrough, then age 11, attended a ball game at C.D. Chapman Memorial Park, which is owned and operated by the City. While leaving the park that evening, Christina fell over a cable that was stretched across the park's entrance, and in the fall she suffered serious injuries. At trial, the City moved for a directed verdict at the close of all the evidence. The trial court denied the motion. The jury returned a $20,000 verdict for the plaintiff, upon which the trial court entered a judgment. The City moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. The court denied the motion. By a 3-2 vote, the Court of Civil Appeals affirmed. City of Geneva v. Yarbrough, 707 So.2d 623
(Ala.Civ.App. 1996).
We reverse and remand. In reviewing the trial court's denial of the City's motions for a directed verdict and a JNOV,[1] we must determine whether the party with the burden of proof, Yarbrough, had produced sufficient evidence of a conflict warranting a jury's consideration. Macon County Comm'n v.Sanders, 555 So.2d 1054, 1056 (Ala. 1990); Bussey v. John DeereCo., 531 So.2d 860, 862 (Ala. 1988). We are governed by the "substantial evidence" rule, Ala. Code 1975, § 12-21-12(d). "Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial *Page 628 
judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.,547 So.2d 870, 871 (Ala. 1989). The evidence must be viewed in a light most favorable to the non-moving party. Continental Eagle Corp.v. Mokrzycki, 611 So.2d 313 (Ala. 1992).
When the City built the park, about 1981, it installed chain-link gates across the entrance. In 1987, to make it easier for pedestrians to enter the park, while still preventing people from driving motor vehicles onto the park grounds, the City replaced these gates with a cable across the entrance. This cable was about one foot above the ground and was suspended loosely between a wooden post and a fence. There was also at the entrance a walk area a few feet wide between the post and another fence that allowed pedestrians to go around the cable. When the cable was first installed, the City attached a caution sign and white cloth strips to it, but there was some evidence suggesting that warning devices might not have been affixed to the cable when the accident in this case occurred.
On June 14, 1991, Christina entered the park in the late afternoon, accompanied by five girlfriends, also minors, and an adult chaperon, Mrs. Dixie Lee. This was Christina's first trip to C.D. Chapman Memorial Park. She testified that when she entered the park there was still some daylight and that she saw and easily stepped over the cable at the entrance. After watching some baseball games, the group decided to leave, sometime around 8:30 to 9:00 p.m. When the girls neared the park entrance, they began to run toward the chaperon's car, which was parked in the lot outside the cable. As the group of running girls approached the cable, the chaperon attempted to remind the girls of the cable, by saying either, "Watch out" or "Watch out for the wire." Several girls successfully jumped the cable, but Christina and one of her friends hit the cable and fell. Christina suffered a broken leg as the result of her fall. Christina testified that she did hear the chaperon's warning while she was running, but heard it only when she was right at the cable. She admitted that upon hearing the warning she did see the cable and tried to jump it, but she said that because of the darkness she had not seen the cable in time to stop or jump all the way over it.
The City contends that its motions for a directed verdict and later for a JNOV should have been granted because, it argues, it was shielded from liability under §§ 35-15-1 through -28, Ala. Code 1975. Those sections make up Chapter 15 of Title 35; that chapter is entitled "Duty of Care Owed Persons on Premises for Sporting or Recreational Purposes." Hereinafter those Code sections are referred to as "recreational use statutes."
Sections 35-15-1 through -5 of the recreational use statutes, appearing in Article 1 of Chapter 15, define and limit the duties of an owner of recreational land in relation to a person using the land for recreational purposes. Under these sections, "[a]n owner, whether public or private, owes no duty to users of the premises except for injury caused by a willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." Poole v. City ofGadsden, 541 So.2d 510 (Ala. 1989); § 35-15-3, Ala. Code 1975.
Unlike Article 1, Article 2, consisting of §§ 35-15-20
through -28, applies specifically to owners of noncommercialpublic recreational land, such as the City here. These sections "provide such landowners with even greater protections than §§35-15-1 through -5." Poole, at 513. See also Grice v. City ofDothan, 670 F. Supp. 318, 321 (M.D.Ala. 1987) ("[Article 2] further limits the liability of owners of land"); Clark v.Tennessee Valley Authority, 606 F. Supp. 130 (N.D.Ala. 1985) ("[Article 2] provides [landowners] even tighter limitations than [Article 1]"). The recreational use statutes appearing in Article 2 provide the following limitations on landowner duty and liability:
"§ 35-15-22.
 "Except as specifically recognized by or provided in this article, an owner of outdoor recreational land who permits noncommercial public recreational use of such land owes no duty of care to inspect or keep such land safe for entry or use by any person for any recreational purpose, or to give warning of a dangerous condition, use, *Page 629 
structure, or activity on such land to persons entering for such purposes."
"§ 35-15-23.
 "Except as expressly provided in this article, an owner of outdoor recreational land who either invites or permits noncommercial public recreational use of such land does not by invitation or permission thereby:
 "(1) Extend any assurance that the outdoor recreational land is safe for any purpose;
 "(2) Assume responsibility for or incur legal liability for any injury to the person or property owned or controlled by a person as a result of the entry on or use of such land by such person for any recreational purpose; or
 "(3) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed."
The plaintiff concedes that the recreational use statutes apply in this case but argues the jury nonetheless could have found the City liable because, the plaintiff argues, the evidence indicated that the conditions of § 35-15-24 were satisfied. That section carves out an exception to the liability limitations provided in §§ 35-15-22 and -23:
"§ 35-15-24.
 "(a) Nothing in this article limits in any way legal liability which otherwise might exist when such owner has actual knowledge:
 "(1) That the outdoor recreational land is being used for non-commercial recreational purposes;
 "(2) That a condition, use, structure, or activity exists which involves an unreasonable risk of death or serious bodily harm;
 "(3) That the condition, use, structure, or activity is not apparent to the person or persons using the outdoor recreational land; and
 "(4) That having this knowledge, the owner chooses not to guard or warn, in disregard of the possible consequences.
 "(b) The test set forth in subsection (a) of this section shall exclude constructive knowledge by the owner as a basis of liability and does not create a duty to inspect the outdoor recreational land."[2]
The City argues that the plaintiff failed to meet her burden of proving that the exception of § 35-15-24 applies. Specifically, the City argues that her evidence was insufficient to allow the jury to find that the cable was "not apparent to the person or persons using the outdoor recreational land," within the meaning of § 35-15-24(a)(3). We agree.
Article 2 does not define the term "apparent." However, the legislature stated that the landowner protections of Article 2 were enacted to "encourage owners of land to allow noncommercial public recreational use of land which would not otherwise be open to *Page 630 
the public." Section 35-15-20. In order to achieve this express purpose, it is necessarily true that those who permit the public upon their lands for noncommercial recreational purposes must not be exposed to greater potential liability under the recreational use statutory scheme than they would have faced at common law. Thus, this Court has continued in some circumstances to look to the common law for guidance in interpreting the recreational use statutes. See, e.g.,Poole, supra; Edwards v. City of Birmingham, 447 So.2d 704
(Ala. 1984); Glover v. City of Mobile, 417 So.2d 175 (Ala. 1982);Wright v. Alabama Power Co., 355 So.2d 322 (Ala. 1978).
Under common law premises liability classifications, it is clear that Christina was merely a licensee. Being on the City's property with the City's consent, but for no business purpose, she was a licensee. Edwards, supra, 447 So.2d at 705; see alsoPoole and Glover, supra. The duty a landowner owes to a licensee is not to willfully or wantonly injure him or to negligently injure him after discovering his peril. Hambrightv. First Baptist Church-Eastwood, 638 So.2d 865, 868
(Ala. 1994). In Edwards, supra, we stated:
 "Under certain circumstances, a landowner may be required to warn a licensee of hidden dangers created by the landowner:
 " '[A] landowner will generally owe no duty to warn a licensee of a potentially dangerous condition unless he does some positive act which creates a new hidden danger, pitfall or trap
[emphasis in original], which is a condition that a person could not avoid by the use of reasonable care and skill [emphasis added]. Otherwise, a landowner has the right to make use of his land as he may see fit. The licensee's entrance on the land carries with it no right to expect the land to be made safe for his reception, but he must assume the risk of whatever may be encountered. Once he is there, the law only requires the landowner to refrain from wantonly, maliciously or intentionally injuring him; in other words, the landowner is not liable unless he does some act which goes beyond mere negligence.'
 "Wright v. Alabama Power Co., 355 So.2d 322, 325
(Ala. 1978) (citations omitted); Glover v. City of Mobile, 417 So.2d 175 (Ala. 1982)."
447 So.2d at 705. See also Poole, supra.
Thus, we conclude that the words "not apparent," as used in § 35-15-24(a)(3), imply that the person could not avoid the condition, use, structure, or activity by the use of reasonable care and skill. Further, the common law rule is that, under ordinary circumstances, trespassing children or children on the land of another as licensees occupy the same position as trespassing adults. Hollis v. Norfolk So. Ry., 667 So.2d 727
(Ala. 1995); Copeland v. Pike Liberal Arts School, 553 So.2d 100
(Ala. 1989); Alabama Great So. R.R. v. Green, 276 Ala. 120,159 So.2d 823 (1964). So, too, do children and adults occupy the same position under the recreational use statutes, because the recreational use statutes provide no exception for minors. SeePoole, supra, 541 So.2d at 513, citing Grice, supra. The definition of "person" for the purposes of Article 2 includes "[a]ny individual, regardless of age, maturity, or experience." Section 35-15-21(4) (emphasis added). "[T]he Alabama Legislature did not intend for minors to be treated any differently from adults relative to the duty owed to them by landowners under §§ 35-15-20 through -28." Grice, supra,670 F. Supp. at 322. This interpretation serves to effectuate the express legislative intent of the recreational use statutes.
The plaintiff did not present substantial evidence indicating that the cable Christina fell over was a condition that a person could not avoid by the use of reasonable care and skill. The fact that Christina was a minor did not alter the duty owed to her under the recreational use statutes. There was evidence suggesting that the park entrance was only dimly lighted. There was a streetlight near the park entrance, but it had been inoperative for several years because vandals had repeatedly broken it and the City had decided not to repair it. Thus, the primary illumination of the entrance and cable would have come from the lights used for the baseball *Page 631 
games in the park itself. However, the undisputed evidence shows that the cable could be seen by the use of reasonable care, and, therefore, the City had no duty to warn licensees using the park of its presence. Several of the other minors at the park with Christina were able to see and jump over the cable only moments before her accident, even as they too were running out of the park. Christina admitted that she knew of the cable because she had stepped over it upon entering the park. Finally, there was no evidence that anyone besides Christina had ever tripped over the cable, despite the park's history of nighttime use.
We hold, under the facts of this case, that the plaintiff failed to present substantial evidence that the condition that caused the injury was "not apparent," within the meaning of § 35-15-24(a)(3), Ala. Code 1975. Accordingly, the judgment of the Court of Civil Appeals is reversed and the cause is remanded for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, KENNEDY, COOK, and SEE, JJ., concur.
HOUSTON, J., concurs in the result.
[1] These motions are now referred to in our Rules of Civil Procedure as motions "for judgment as a matter of law." See Rule 50(a) and (b), Ala. R. Civ. P.
[2] We note that the four-part "actual knowledge" test of §35-15-24 appears likely to be a codification of the test employed by the state courts of Georgia when determining whether a noncommercial recreational landowner may be liable for "willful . . . failure to guard or warn against a dangerous condition, use, structure, or activity." See Ga. Code Ann. § 51-3-25 (1982), the analogue to § 35-15-3, Ala. Code 1975. Before the 1981 enactment of § 35-15-24, Ala. Code 1975, the Georgia Court of Appeals had interpreted the "willful failure" language of current § 51-3-25, Ga. Code Ann. (1982), as follows:
 " 'A wilful failure' imports a conscious, knowing, voluntary, intentional failure, a purpose or willingness to make the omission, rather than a mere inadvertent, accidental, involuntary, inattentive, inert, or passive omission.' Carpenter v. Forshee, 103 Ga. App. 758, 773, 120 S.E.2d 786, 796. In the context of the whole statute, it would seem that a wilful failure to guard or warn would require actual knowledge of the owner that its property is being used for recreational purposes; that a condition exists involving an unreasonable risk of death or serious bodily harm; that the condition is not apparent to those using the property; and that having this knowledge, the owner chooses not to guard or warn, in disregard of the possible consequences. This test excludes either constructive knowledge or a duty to inspect. We believe this to be the intent of sections [51-3-22] and [51-3-25, Ga. Code Ann. (1982)] read together."
McGruder v. Georgia Power Co., 126 Ga. App. 562, 563-64,191 S.E.2d 305, 307, rev'd on other grounds, 229 Ga. 811,194 S.E.2d 440 (1972). See also, e.g., Georgia Marble Co. v.Warren, 183 Ga. App. 866, 360 S.E.2d 286 (1987); South GwinnettAthletic Ass'n v. Nash, 220 Ga. App. 116, 469 S.E.2d 276
(1996).