PARKER, Justice.
*1244 The City of Guntersville ("the City") petitions this Court for a writ of mandamus ordering the Marshall Circuit Court ("the circuit court") to vacate its order denying the City's motion for a summary judgment and to enter a summary judgment in favor of the City in an action filed by Margaret Hulgan against the City.
Facts and Procedural History
The City owns and operates a municipal park, known as Civitan Park. The deed conveying the property on which the park is located to the City specified that the property being conveyed was "for public recreation for the benefit of all members of the general public without distinction or discrimination and in accordance with generally recognized standards of development and operation of such lands for public parks or for areas providing public access to the waters of public lakes." The affidavit testimony of Cecil Conerly III, the director of the department of parks and recreation for the City, states that the City "does not charge any fee or other expense to the general public for the use of ... Civitan Park." Conerly's affidavit further states that Civitan Park "is open for use by members of the general public without cost" and that the City "neither obtains nor derives any financial benefit, directly or indirectly, from the use of ... Civitan Park."
On July 4, 2012, the City hosted its annual fireworks show at Civitan Park, which Hulgan attended. Hulgan's deposition testimony indicates that, on July 4, 2012, Leroy Windsor drove Hulgan to Civitan Park and that the two of them arrived at Civitan Park at 10:00 a.m. Windsor parked his vehicle in a parking lot in Civitan Park. Conerly's affidavit includes the following description of the parking lot in which Windsor parked his vehicle:
"There are a series of vertical poles located at the edge of the parking lot to Civitan Park and the grassy area of the Park. The poles have holes in the top which allow for steel cabling to be run horizontally through the poles to prevent vehicles from entering the grassy area of the Park. Several of the poles are supported by a diagonal crossbar."
It is undisputed that, on July 4, 2012, there was no steel cabling running horizontally between the poles. After parking his vehicle, Windsor and Hulgan exited the parking lot and went to a pavilion in Civitan Park. Hulgan's deposition testimony indicates that, in walking to the pavilion, she walked directly past the pole and diagonal crossbar she would, later that evening, trip over, resulting in her fall. Hulgan's deposition testimony indicates that she did not pay any attention to the pole and diagonal crossbar as she walked past them going to the pavilion. Hulgan also stated in her deposition testimony that "[i]f [she] looked over at [the pole and diagonal crossbar she] probably would've seen [them]." Hulgan and Windsor remained near the pavilion until the fireworks show concluded at approximately 9:30 p.m.
After the fireworks show, Hulgan and Windsor, along with friends and members of Hulgan's family, walked back to the parking lot where Windsor had parked his vehicle. Hulgan's deposition testimony indicates that, although there were security lights illuminating the parking lot, the lighting "was very poor." Hulgan's deposition testimony also indicates that there was enough light to see that she was walking toward Windsor's truck. The parties also presented competing expert affidavit testimony concerning the visibility of the *1245 diagonal crossbar and the danger presented by it. Hulgan's deposition testimony indicates that, as she was walking, she tripped over a diagonal crossbar supporting one of the poles at the edge of the parking lot and fell to the ground. Hulgan's deposition testimony states that she landed on her "right shoulder area." Hulgan incurred various injuries to the area of her right shoulder as a result of the fall.
Hulgan's deposition testimony indicates that she had attended each of the City's annual fireworks shows at Civitan Park "[e]ver since [the City] started shooting fireworks" and that she had watched the fireworks shows from Civitan Park "for several years"; she could not recall an exact number of years. Hulgan's deposition testimony also states that she had watched the annual fireworks show from the pavilion every year, if the pavilion was unoccupied when she arrived at Civitan Park.
Hulgan presented the affidavit testimony of Thomas E. Cooper, a professional engineer. Cooper's affidavit testimony indicates that he inspected the diagonal crossbar over which Hulgan allegedly tripped and the area surrounding the crossbar "at [or] about the time Ms. Hulgan fell." Cooper's affidavit testimony further states that, in his opinion, "the light in question and route of ingress/egress (including the pole and [diagonal crossbar] ) were unreasonably dangerous at the time of Ms. Hulgan's fall."
David Wood, the supervisor of maintenance for the City's department of parks and recreation, provided affidavit testimony indicating that the diagonal crossbar over which Hulgan allegedly tripped had been installed at Civitan Park more than 19 years before Hulgan's fall. Wood's affidavit testimony also indicates that, before Hulgan's incident, the City "had no knowledge that there was any potential of a nighttime trip hazard presented by the crossbar upon which [Hulgan] contends she tripped and fell in this case." Wood's affidavit testimony indicates that, "[d]uring the entire time of [Wood's] employment as [s]upervisor for [m]aintenance," the City had not received a complaint that the diagonal crossbar over which Hulgan alleges she tripped presented a dangerous condition.
On June 30, 2014, Hulgan sued the City, alleging negligence. Hulgan specifically alleged that the City "owed a duty to ... Hulgan not to create, cause, and/or allow unreasonably dangerous conditions to exist at or on [the] City['s] ... property." Hulgan also alleged that the City "recklessly and with knowledge of the potential consequences of its actions, breached its duty to ... Hulgan ...." Hulgan also alleged that the diagonal crossbar over which she says she tripped was a hidden danger; thus, Hulgan alleged that the City is not entitled to immunity under §§ 35-15-1 et seq. and 35-15-20 et seq., Ala. Code 1975 (hereinafter referred to collectively as "the recreational-use statutes"). On July 16, 2014, the City filed an answer to Hulgan's complaint alleging, among other things, that it was entitled to immunity under the recreational-use statutes and under § 11-47-190, Ala. Code 1975.
On June 14, 2016, the City filed a motion for a summary judgment. The City argued that it was entitled to immunity from Hulgan's action under the recreational-use statutes and under § 11-47-190. On August 22, 2016, Hulgan filed a response to the City's summary-judgment motion. On August 24, 2016, the circuit court entered an order denying the City's summary-judgment motion. The City then filed in this Court a petition for a writ of mandamus ordering the circuit court to vacate its order denying the City's summary-judgment motion and to enter a summary judgment in its favor.
*1246 Standard of Review
We apply the following standard of review to a mandamus proceeding challenging the denial of a motion for a summary judgment based on a claim of immunity:
" 'While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus.' Ex parte Rizk, 791 So.2d 911, 912 (Ala. 2000). A writ of mandamus is an extraordinary remedy available only when there is: '(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.' Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala. 2001)."
Ex parte Nall, 879 So.2d 541, 543 (Ala. 2003). This Court has stated that the recreational-use statutes provide immunity to qualifying landowners. See Tuders v. Kell, 739 So.2d 1069, 1072 (Ala. 1999), and Owens v. Grant, 569 So.2d 707, 710-12 (Ala. 1990).
Discussion
The City first argues that it has a clear legal right to immunity from Hulgan's claims against it under the recreational-use statutes. In Ex parte City of Geneva, 707 So.2d 626 (Ala. 1997), this Court set forth the following applicable law concerning the recreational-use statutes:
" Sections 35-15-1 through -5[, Ala. Code 1975,] of the recreational use statutes, appearing in Article 1 of Chapter 15, define and limit the duties of an owner of recreational land in relation to a person using the land for recreational purposes. Under these sections, '[a]n owner, whether public or private, owes no duty to users of the premises except for injury caused by a willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.' Poole v. City of Gadsden, 541 So.2d 510 (Ala. 1989) ; § 35-15-3, Ala. Code 1975.
"Unlike Article 1, Article 2, consisting of §§ 35-15-20 through -28, [Ala. Code 1975,] applies specifically to owners of noncommercial public recreational land, such as the City here. These sections 'provide such landowners with even greater protections than §§ 35-15-1 through -5.' Poole, at 513. See also Grice v. City of Dothan, 670 F.Supp. 318, 321 (M.D. Ala. 1987) ('[Article 2] further limits the liability of owners of land'); Clark v. Tennessee Valley Authority, 606 F.Supp. 130 (N.D. Ala. 1985) ('[Article 2] provides [landowners] even tighter limitations than [Article 1]'). The recreational use statutes appearing in Article 2 provide the following limitations on landowner duty and liability:
" '§ 35-15-22[, Ala. Code 1975 ].
" 'Except as specifically recognized by or provided in this article, an owner of outdoor recreational land who permits non-commercial public recreational use of such land owes no duty of care to inspect or keep such land safe for entry or use by any person for any recreational purpose, or to give warning of a dangerous condition, use, structure, or activity on such land to persons entering for such purposes.'
" '§ 35-15-23[, Ala. Code 1975 ].
" 'Except as expressly provided in this article, an owner of outdoor recreational land who either invites or permits non-commercial public recreational *1247 use of such land does not by invitation or permission thereby:
" '(1) Extend any assurance that the outdoor recreational land is safe for any purpose;
" '(2) Assume responsibility for or incur legal liability for any injury to the person or property owned or controlled by a person as a result of the entry on or use of such land by such person for any recreational purpose; or
" '(3) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.' "
707 So.2d at 628-29.
Hulgan did not argue below and does not argue in her response before this Court that the recreational-use statutes do not apply in this case. Instead, Hulgan argued below and argues before this Court that she presented substantial evidence indicating that the conditions of § 35-15-24, Ala. Code 1975, which "carves out an exception to the liability limitations provided in §§ 35-15-22 and -23," Ex parte City of Geneva, 707 So.2d at 629, were satisfied, allowing her to maintain her action against the City. Section 35-15-24 states, in pertinent part:
"(a) Nothing in this article limits in any way legal liability which otherwise might exist when such owner has actual knowledge:
"(1) That the outdoor recreational land is being used for non-commercial recreational purposes;
"(2) That a condition, use, structure, or activity exists which involves an unreasonable risk of death or serious bodily harm;
"(3) That the condition, use, structure, or activity is not apparent to the person or persons using the outdoor recreational land; and
"(4) That having this knowledge, the owner chooses not to guard or warn, in disregard of the possible consequences.
"(b) The test set forth in subsection (a) of this section shall exclude constructive knowledge by the owner as a basis of liability and does not create a duty to inspect the outdoor recreational land."
Initially, we note that Hulgan has the burden of proving by substantial evidence that the exception of § 35-15-24 applies. See Ex parte City of Geneva, 707 So.2d at 629 (agreeing with the noncommercial landowner's argument that the plaintiff "failed to meet her burden of proving [by substantial evidence] that the exception of § 35-15-24 applies"). Given the use of the conjunctive conjunction "and" in the list in § 35-15-24(a)(1)-(4), Ala. Code 1975, Hulgan must present substantial evidence of each element to prove that the exception of § 35-15-24 applies. See, e.g., Payne v. State, 791 So.2d 383, 398 (Ala. Crim. App. 1999) (stating that use "of the conjunctive 'and' between" subparts of a rule required the satisfaction of all the subparts of the rule); see also Michael L. Roberts, Alabama Tort Law § 8.07 (6th ed. 2015)("[P]laintiff must show that the [landowner], with actual knowledge of each of the elements [set forth in § 35-15-24(a)(1)-(3) ], chose not to guard or warn against the danger." (emphasis added)).
The City argues in its petition before this Court, as it did below, that Hulgan failed to meet her burden in proving that the exception of § 35-15-24 applies. Essentially, the City argues that Hulgan failed to present substantial evidence indicating that the City had the actual knowledge contemplated in § 35-15-24(a)(2). The City argues that it "had no actual notice as required by Ala. Code [1975,] § 35-15-24(b) that the alleged defect giving rise to [Hulgan's] injuries in this case *1248 constituted an unreasonable risk of death or serious bodily harm." The City does not deny that it had actual knowledge of the existence of the diagonal crossbar over which Hulgan allegedly tripped. Instead, the City argues that Hulgan failed to present substantial evidence that the City had actual knowledge that the diagonal crossbar presented a "condition, use, structure, or activity ... which involves an unreasonable risk of death or serious bodily harm." In support of its argument, the City relies on Wood's affidavit testimony. As summarized above, Wood's affidavit testimony indicates that, despite the diagonal crossbar having been in place for nearly 20 years before Hulgan allegedly tripped on it, the City had not received a complaint indicating that the crossbar presented a dangerous condition. Further, Wood's affidavit testimony states that the City "had no knowledge that there was any potential of a nighttime trip hazard presented by the crossbar upon which [Hulgan] contends she tripped and fell in this case."
In response, Hulgan argues that the City did have actual knowledge that the diagonal crossbar over which Hulgan allegedly tripped presented a "condition, use, structure, or activity ... which involves an unreasonable risk of death or serious bodily harm." In support of her argument, Hulgan relies on Cooper's affidavit testimony. As summarized above, Cooper concluded "that the light in question and route of ingress/egress (including the pole and [diagonal crossbar] ) were unreasonably dangerous." However, Cooper's affidavit is merely an opinion on the danger allegedly presented by the diagonal crossbar. Although such evidence may be relevant to a showing that the City had constructive knowledge [1] of "a condition, use, structure, or activity ... which involves an unreasonable risk of death or serious bodily harm," § 35-15-24(b) specifically states that "[t]he test set forth in subsection (a) of this section shall exclude constructive knowledge by the owner as a basis of liability...." (Emphasis added.) Nothing in Cooper's affidavit testimony rebuts Wood's affidavit testimony indicating that the City did not have actual knowledge that the diagonal crossbar presented "a condition, use, structure, or activity ... which involves an unreasonable risk of death or serious bodily harm." Accordingly, we must conclude that Hulgan has failed to present substantial evidence in support of § 35-15-24(a)(2) and, thus, has not demonstrated that she is entitled to maintain her action against the City.
We note that Hulgan also appears to argue that she presented substantial evidence in support of § 35-15-24(a)(4), Ala. Code 1975, which requires her to present substantial evidence that the City chose "not to guard or warn, in disregard of the possible consequences," against the "unreasonable risk of death or serious bodily harm" allegedly presented by the diagonal crossbar over which Hulgan says she tripped. Hulgan argues in her response that she presented substantial evidence that the City "made a conscious cho[ic]e to remove the [steel] cable which prevented individuals from walking between the [poles] of the fence as [Hulgan] did." Hulgan further argues that the City had actual knowledge "of the fact the [steel] cable was gone and there were no warnings regarding the [crossbar] upon which [Hulgan] fell."
*1249 Assuming for the sake of argument that Hulgan is correct in her assertion that she presented evidence sufficient to satisfy the requirement in § 35-15-24(a)(4),[2] Hulgan has not explained how this relates to her evidentiary burden of proving that the City had the actual knowledge contemplated in § 35-15-24(a)(2). As discussed above, Hulgan has not directed this Court's attention to any evidence indicating that the City had actual knowledge that the diagonal crossbar over which Hulgan allegedly tripped presented "a condition, use, structure, or activity ... which involve[d] an unreasonable risk of death or serious bodily harm."
Based on the foregoing, we conclude that the City has demonstrated that it has a clear legal right to immunity under the recreational-use statutes from Hulgan's claim against it. The City has demonstrated that Hulgan failed to present substantial evidence in support of each of the elements set forth in § 35-15-24. Our conclusion pretermits discussion of the City's other arguments.
Conclusion
We grant the City's petition and direct the circuit court to vacate its order denying the City's summary-judgment motion and to enter a summary judgment for the City.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Main, and Bryan, JJ., concur.

In Hale v. Kroger Ltd. Partnership I, 28 So.3d 772, 779 (Ala. Civ. App. 2009), the Court of Civil Appeals, citing S.H. Kress & Co. v. Thompson, 267 Ala. 566, 569, 103 So.2d 171, 174 (1957), provided the following explanation of constructive knowledge: "A [premises owner] is charged with knowledge of a hazard if the evidence shows that the hazard has existed on the premises for such a length of time that a reasonably prudent [premises owner] would have discovered and removed it."

The City disputes whether Hulgan presented evidence sufficient to demonstrate that the City chose "not to guard [against] or warn [of], in disregard of the possible consequences," the danger allegedly presented by the pole and diagonal crossbar over which Hulgan allegedly tripped. Specifically, the City notes that there is "no evidence whatsoever ... either (1) that any cable was ever installed at any time prior to plaintiff's fall, or that if it was, (2) it was the City that removed the cable." The City's reply brief, at p. 2 n. 1.